IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL JENSEN,<br><br>                    Plaintiff,<br>v.<br><br>DR. RICHARD GARDEN, *et al.*,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-cv-646<br><br>District Judge Jill N. Parrish |

Before the court is a Motion for Summary Judgment filed by defendants Chad Duford and Richard Garden on June 23, 2017 (ECF No. 36). Plaintiff Michael Jensen, who proceeds *pro se*, filed a response on July 6, 2017 (ECF No. 40) and various other responses (ECF Nos. 42, 43, 50). The defendants replied on September 5, 2017 (ECF No. 44). For the reasons below, the defendants' motion is **GRANTED**.

## I.    SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is genuine only if "a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014). "In making this determination," the court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (citation omitted).

However, when qualified immunity is presented at the summary judgment phase, the court must employ a different paradigm: "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). The plaintiff must show: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013). This burden is a heavy one. *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

In qualified immunity cases, the requirement that the court view the evidence and draw inferences in the light most favorable to the nonmoving party "usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted). However, "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). If the plaintiff's story is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Id.* (citation omitted).

If the plaintiff meets the requisite two-part burden by demonstrating the violation of a clearly established constitutional right, then the burden shifts to the defendant "to show that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877 (10th Cir. 2014) (citation omitted). This showing is made under the traditional summary judgment standard. *See id.*

## II. FACTUAL BACKGROUND[1]

Michael Jensen is an inmate at the Utah State Prison in Draper, Utah. At the time of Mr. Jensen's allegations, Dr. Garden was the Administrative and Clinical Director over health services for the Utah Department of Corrections. Mr. Duford was a Physician Assistant at the prison.

On January 11, 2014, Mr. Jensen was working in the boiler operations department of the prison as a plumber when he heard a pop and felt pain in his shoulder. He immediately informed his supervisor, Jason Corey. Mr. Corey called the medical department and requested medical attention for Mr. Jensen. Mr. Corey also completed an Initial Contract Report documenting the injury.[2]

On January 29, Mr. Jensen submitted an Inmate Care Request, which reads: "I would like to see a provider. My arm popped at work and it's not getting any better. PLease [sic] see me on this matter. Thanks."

Mr. Jensen did not receive medical treatment until he was seen by Mr. Duford on February 3, 2014. On exam, Mr. Duford noted that Mr. Jensen had limited range of motion but good strength in his shoulder. He diagnosed Mr. Jensen with "UNSPECIFIED SITE OF SPRAIN AND STRAIN" and proscribed Naproxen tablets (500 mg, twice a day). He also referred Mr. Jensen to Bohn Bales for physical therapy with the following note: "Right shoulder strain, Mild pain with abduction. Please evaluate and treat."

---

[1] The court's recitation of the facts takes as true Mr. Jensen's allegations that are not blatantly and convincingly contradicted by the record. Those allegations are supplemented by other facts in the record that Mr. Jensen does not dispute.

[2] The report contains internal inconsistencies. For example, Mr. Corey's signature is affixed twice—once next to the date "2/25/2014" and once next to the date "2/6/2014." *See* Def.'s Ex. 4, ECF No. 29-4. On the page dated "2/6/2014," Mr. Corey's notes indicate that Mr. Jensen "was seen in the Infirmary on 09 Feb 2014"—three days after Mr. Corey purports to have signed the report.

Mr. Jensen attended physical therapy appointments with Mr. Bales on February 12, February 19, February 26, and March 5. On June 11, Mr. Jensen again saw Mr. Duford, who noted that Mr. Jensen's shoulder pain had not improved with anti-inflammatories and physical therapy. Mr. Duford then prescribed acetaminophen tablets (325 mg, twice a day) and referred Mr. Jensen to Joseph Coombs, PA, at the onsite orthopedic clinic. After that, Mr. Duford had no further role in treating Mr. Jensen's shoulder injury.

On July 22, 2014, Mr. Coombs ordered an x-ray of Mr. Jensen's shoulder. And on August 6, Dr. Garden authorized an MRI. The x-ray was generally unremarkable, but the MRI revealed "a partial thickness tear bursal sided tear of the anterior supraspinatus tendon involving the anterior half of the supraspinatus tendon with associated adjacent tendinopathy." Pl.'s Ex. 3, ECF No. 4-3.

On September 22, 2014, Tim Beals, MD, recommended "conservative management . . . consisting of PT and a subacromial injection." Pl.'s Ex. 3, ECF No. 4-3. On follow-up, Lucas Anderson, MD, noted that conservative management had failed and recommended surgery. *Id.* Robert Tashjian, MD, performed surgery on February 27, 2015. Def.'s Ex. 1, ECF No. 29-1.

### III. DISCUSSION

Mr. Jensen alleges that his treatment by Dr. Garden and Mr. Duford violated his civil rights. *See* 42 U.S.C. § 1983. Specifically, Mr. Jensen alleges the following:

1. The defendants violated his right to equal protection.[3] After he was injured, he was treated differently as an inmate than he would have been if he had been a non-inmate

---

[3] Mr. Jensen's complaint indicates that this claim arises out of his "Sixth Amendment and Liberty Interest." Compl. ¶ 14, ECF No. 4. But the Sixth Amendment applies only to criminal prosecutions and does not touch on Mr. Jensen's right to equal protection of the law. Construing Mr. Jensen's *pro se* filings liberally, *see Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003), the court treats Mr. Jensen's first claim as arising under the Fourteenth

working any other state job. Rather than being able to file a worker's compensation claim, Mr. Jensen was "subjected to sizeable deductions from his small sums in his inmate account to cover medical copays." Compl. ¶ 14, ECF No. 4.

2. The defendants violated his right to be free from cruel and unusual punishment. Dr. Garden and Mr. Duford were deliberately indifferent to Mr. Jensen's medical needs and egregiously delayed his treatment. *Id.*

The court addresses both of Mr. Jensen's claims in turn. Because Mr. Jensen does not meet his burden to show that the defendants violated his constitutional rights, the court need not reach the question of whether those rights were clearly established.

## A. EQUAL PROTECTION

Mr. Jensen's first claim is that Dr. Garden and Mr. Duford violated his equal protection rights. His basis for this claim is that he was charged co-pays for his medical expenses.

"To prevail on an equal protection claim, a plaintiff must show that the government has treated him differently than others who are similarly situated." *White v. Golder*, 245 Fed. App'x at 764. Mr. Jensen claims that if he were working another state job, not as an inmate, he would have been able to file a worker's compensation claim rather than being subjected to deductions from his inmate account. But Mr. Jensen and non-inmate state employees are not similarly situated: He is incarcerated, and they are not. Absent an allegation that Mr. Jensen was treated differently from other inmates, his equal protection claim fails as a matter of law.

Other inmates have brought similar claims under the Eight Amendment rather than under the Fourteenth Amendment. But under that analysis, Mr. Jensen's claim would still fail. Charging inmates for medical care is not *per se* unconstitutional. *Reynolds v. Wagner*, 128 F.3d

---

Amendment. *See White v. Golder*, 245 Fed. App'x 763, 764 (10th Cir. 2007) (analyzing a similar claim under the equal protection clause of the Fourteenth Amendment).

166, 174 (3d Cir. 1997) (analyzing a similar claim under the Eight Amendment). "Instead, such a requirement simply represents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world." *Id.*

There are circumstances where charging inmates for medical care is unconstitutional under the Eighth Amendment. For example, the Third Circuit has held that "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Neither may prison officials "condition provision of needed medical services on the inmate's ability or willingness to pay." *Id.* Mr. Jensen has not alleged any facts to implicate the latter category. And to the extent Mr. Jensen's claim falls into the former category, it is addressed in the following section.

### B. Cruel and Unusual Punishment

Mr. Jensen's second claim is that medical care provided by Dr. Garden and Mr. Duford was so deficient that it violated Mr. Jensen's Eighth-Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. It requires prison officials to "provide humane conditions of confinement" including "adequate . . . medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). However, the Eighth Amendment does not provide prisoners with a means to seek redress for their every dissatisfaction with medical care. Rather, it prohibits "the *wanton* infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (citation omitted).

To state a cognizable claim under the Eighth Amendment for failure to provide proper medical care, a prisoner must "at a minimum, allege deliberate indifference to his serious

medical needs." *Id.* (citation omitted). "[A]llegations of inadvertent failure to provide adequate medical care or of a negligent diagnosis simply fail to establish the requisite culpable state of mind." *Id.* (citations and alterations omitted).

In evaluating whether a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment, the court must consider two components: objective (was the deprivation sufficiently serious?) and subjective (did the officials act with a sufficiently culpable state of mind?). *Id.*

Under the objective component, a medical need is "sufficiently serious . . . if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citations omitted). However, all Mr. Jensen alleges is that he injured his shoulder. The documents attached to his complaint indicate that he told his supervisor at the time that he had heard a pop and felt pain. There is no allegation that Mr. Jensen's shoulder appeared bruised, bleeding, broken, or disfigured in any way. Nothing about Mr. Jensen's injury was so obvious that his need to see a doctor was easily recognizable. And prior to Mr. Jensen's first visit with Mr. Duford, no physician had diagnosed Mr. Jensen's shoulder injury and mandated treatment. Consequently, to the extent that Mr. Jensen's claim is that he should have been seen by a physician immediately, it fails because Mr. Jensen's medical need at the time was not sufficiently serious.[4]

---

[4] To the extent Mr. Jensen's claim is that he was not seen soon enough after his injury, it also fails against the named defendants. Mr. Jensen does not allege that either Mr. Duford or Dr. Garden had any knowledge of his injury prior to Mr. Jensen's visit to Mr. Duford on February 3, 2014. They cannot have acted with the requisite state of mind to delay treatment if they were unaware of Mr. Jensen's injury.

7

However, to the extent that Mr. Jensen's claim is that prison doctors were indifferent to his needs after meeting with him and diagnosing his injury, the court will assume, without deciding, that his medical need was sufficiently serious. The inquiry then turns to the subjective component: whether Mr. Duford and Dr. Garden acted with a sufficiently culpable state of mind.

The subjective component requires plaintiffs to show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[T]he 'inadvertent failure to provide adequate medical care' tantamount to negligence does not satisfy the deliberate indifference standard." *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (unpublished) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Furthermore, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 811 10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

Here, Mr. Jensen alleges that he suffered severe pain, loss of movement, and inability to perform his job tasks because the defendants delayed access to appropriate surgical treatment. Delay in receiving treatment is cognizable only if the delay was caused by deliberate indifference and resulted in substantial harm. *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993). "[I]n the context of a missed diagnosis or delayed referral, there must be direct or circumstantial evidence that 'the need for additional treatment or referral to a medical specialist is obvious,'" and "'where a doctor merely exercises his considered medical judgment,'" no deliberate indifference

exists. *Sparks*, 690 F. App'x at 604 (quoting *Self v. Crum*, 439 F.3d 1227, 1231-32 (10th Cir. 2006)).

In *Barron v. Polhman*, the Tenth Circuit rejected an inmate's Eighth Amendment claim in substantially similar circumstances. 122 Fed. App'x 416 (10th Cir. 2005) (unpublished). In that case, an inmate fell, injuring his shoulder. *Id.* at 418. A nurse examined him the same day, noted no bruising and recommended Tylenol and rest. *Id*. The next day, the inmate complained of pain to his work supervisor, who promised to call medical but did not. *Id*. Three days later, x-rays were done showing the inmate had a separated shoulder. *Id*. Later, the inmate was diagnosed with a rotator-cuff tear, and surgery was done. *Id*.

The Tenth Circuit affirmed the district court's dismissal of the case, holding that none of the prison employees sued was deliberately indifferent. *Id.* at 419–20. It concluded that the nurse's response was adequate (even if the inmate disagreed with her diagnosis and suggestion). *Id.* at 419. It further concluded that the supervisor was not deliberately indifferent because he was not presented with a diagnosis requiring immediate medical attention. *Id*.

Here, Mr. Duford saw Mr. Jensen within three business days after he submitted a non-emergent health care request. At the visit, Mr. Duford examined and tested Mr. Jensen's shoulder, diagnosed a mild shoulder sprain or strain, prescribed pain-relieving medication, and referred him to physical therapy. Mr. Duford exercised his "considered medical judgment," *Self*, 439 F.3d at 1232, and provided a course of treatment. Based on the evidence, this is a sufficient response to the injury presented, even if Mr. Jensen's injury was more serious than a shoulder sprain or strain. *See, e.g., Barron*, 122 F. App'x at 418-420; *Self*, 439 F.3d at 1234 ("Where a doctor faces symptoms that could suggest either indigestion or stomach cancer, and the doctor mistakenly treats indigestion, the doctor's culpable state of mind is not established even if the

9

doctor's medical judgment may have been objectively unreasonable.") There is no evidence showing that it was "obvious" at the time that Mr. Jensen needed additional or specialized care beyond the physical therapy and medication ordered. *See Self*, 439 F.3d as 1232.

On the contrary, other medical evidence in the record supports Mr. Duford's conservative course of action. Even after Mr. Jensen underwent an MRI that showed partial tears in his rotator cuff, consulting physician Dr. Beals recommended "conservative management," including physical therapy and a steroidal injection. *See* Pl.'s Ex. 3, ECF No. 4-3.

Mr. Duford treated Mr. Jensen based on his considered medical judgment. Even if Mr. Duford might have been mistaken in his initial diagnosis, and even if Mr. Jensen would have preferred faster progress or a faster road to surgery, Mr. Duford's diagnoses, treatment, and referrals all show he was not deliberately indifferent as a matter of law.

## IV. CLAIMS AGAINST DR. GARDEN

Mr. Jensen argues that Dr. Garden should be liable for failing to supervise his employees. *See* Pl.'s Resp. 2, ECF No. 43. But "supervisor status by itself is insufficient to support liability." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Besides, Mr. Duford committed no underlying violation. Consequently, the claims against Dr. Garden fail.

## V. ORDER

For the reasons above, the defendants' Motion for Summary Judgment (ECF No. 36) is GRANTED. This action is DISMISSED.

Signed March 23, 2018

BY THE COURT

*Jill N. Parrish*

_____
Jill N. Parrish
United States District Court Judge